IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| v. | : | |
| | : | **CASE NO:** |
| **JOSE LUIS PENA-FERRERAS,** | : | **7:23-CR-15-WLS-TQL-1** |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

### ORDER

On October 17, 2024, a sentencing hearing was held in the above-styled action. Immediately prior to conducting the sentencing portion of the hearing, the Court issued from the bench, its rulings overruling the Defendant's Objections to Presentence Report (Doc. 91) ("Objections"), Defendant's Motion for Sentence Variances (Doc. 95) and Defendant's Motion for Sentence Departures (Doc. 94) ("Variances/Departures Motions")[1]. This Order memorializes the Court's rulings from the bench.

### I. BACKGROUND

On February 15, 2023, a federal grand jury issued a three-count Indictment against Defendant Jose Luis Pena-Ferreras and his Co-Defendant, Ismil Rodriguez-Aybar.[2] On July 11, 2024, Defendant Pena-Ferreras entered a plea of guilty to Count One of the Indictment charging him with Possession with Intent to Distribute Fentanyl, in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(A)(vi), and 18 U.S.C. § 2. *See* Plea Agreement (Doc. 77).

This matter was set for sentencing hearing on October 17, 2024. On September 12, 2024, the United States Probation Office ("USPO") filed the Draft Presentence Investigation Report (Doc. 81), and a Final Presentence Investigation Report ("PSR") was filed on October 10, 2024. On October 7 and 16, 2024, respectively, Defendant filed Objections to

---

[1] The content of Documents 94 and 95 are duplicative and considered together.

[2] On September 30, 2024, Co-Defendant filed a motion to suppress (Doc. 88). Co-Defendant's trial has been continued to the Court's February 2025 Valdosta Trial Term.

1

the PSR and the Variances/Departures Motions. The Government's Response to Defendant's Objections to Presentence Report (Doc. 96) ("Response") was filed on October 16, 2024. At the hearing, the Government relied on the stipulations of fact presented in the Plea Agreement (Doc. 77).

Upon consideration of the entire record, including the Parties' pleadings and documents referenced above, the PSR, counsels' arguments on behalf of the Defendant and the Government, and for the reasons stated on the record, and by reference incorporated herein, the Court overruled the Defendant's Objections and denied the Variances/Departures Motions.

## II. OBJECTIONS

### A. Objections Related to Firearm

#### 1. Increase in Base Offense Level ("BOL")

Defendant objects to the PSR ¶ 21 assessing a two-level increase in his BOL for possession of a dangerous weapon—the loaded Glock pistol. U.S.S.G. § 2D1.1(b)(1). Defendant states that at the time of his arrest, he was driving his wife's[3] vehicle, that his wife owned the gun, and the gun was only in the vehicle for his wife's and children's protection. Defendant contends he was not in possession, constructive or otherwise, of the firearm.

The gun was loaded with a magazine of fifteen rounds of ammunition and was located in a fanny pack along with Defendant's wallet laying in the front driver's side seat of the vehicle Defendant was driving. (Doc. 77 at 9; PSR ¶¶ 9–10). In his Plea Agreement, Defendant admitted the gun was in the vehicle. (Doc. 77 at 9). In his statement to law enforcement officers, under *Miranda*, Co-Defendant Rodriguez-Aybar stated he asked Defendant about the firearm. Defendant told Rodriguez-Aybar not to worry about the firearm because it was not stolen. (PSR ¶ 11).

The Sentencing Guidelines explain the two-level enhancement "reflects the increased danger of violence when drug traffickers possess weapons. The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was

---

[3] In his Objections, Defendant's wife is referred to as his girlfriend.

2

connected with the offense." U.S.S.G. § 2D1.1(b)(1), comment 11(A). The Eleventh Circuit's position states:

> Once the prosecution has shown by a preponderance of the evidence that the firearm was present at the site of the charged conduct, the evidentiary burden shifts to the defendant to show that a connection between the firearm and the offense is clearly improbable. . . .
>
> . . . The proximity of the handgun to several drug-related objects, located in the house where conversations concerning the marijuana importation occurred, sufficiently showed that the handgun was possessed during the offense. Furthermore, [defendant] presented no evidence to suggest that a connection between the handgun and the marijuana importation was clearly improbable.

*United States v. Hall*, 46 F.3d 62, 63–64 (11th Cir. 1995) (citations omitted). The Government established that the gun was present during the offense to which Defendant pled guilty. After being given the opportunity to present evidence at the hearing, and after consultation with his counsel, Defendant chose not to present evidence to show that a connection between the firearm and the offense is clearly improbable. The fact that the gun was owned by someone other than the Defendant does not mean it is improbable that the gun was present in connection with the drug transaction. As such, the evidence shows that the Defendant was clearly aware of the presence of the gun, it was in very close proximity to Defendant, and to the drugs which were in a backpack in the back seat of the vehicle.

Accordingly, Defendant's Objection to the two-level enhancement is **OVERRULED**.

2. Effect of Gun on Safety Valve

Defendant also argued that because the gun was not present in connection with the drug transaction, that he should not be denied the safety valve treatment. Because the Court found that the two-level enhancement was appropriate, the Defendant is not entitled to the benefit of the safety valve.

Accordingly, Defendant's Objection to the failure to include safety valve treatment in the PSR is **OVERRULED**.

### B. Objections Related to Calculations Based on Type or Amount of Drugs

1. Inclusion of Methamphetamine in Calculation

Defendant objects to the inclusion of 4,808.7 grams of actual methamphetamine in the calculation of the drug quantity table because Defendant only pled guilty to Count One which alleged he possessed with intent to distribute Fentanyl. Defendant contends that only the 974 grams of Fentanyl analogue should be used to calculate his BOL. (*See* PSR ¶¶ 19–20).

Under the Sentencing Guidelines, types and quantities of drugs not specified in the count of conviction may be considered in determining Defendant's offense level. U.S.S.G. § 2D1.1 cmt. 5; § 1B1.3(a)(2). Eleventh Circuit case law provides that "relevant conduct includes quantities of drugs that are the subject of dismissed counts of the indictment." *United States v. Kennedy*, 326 F. App'x 509, 511 (11th Cir. 2009). "Relevant conduct must be proved by a preponderance of the evidence[.]" *Id.* In his Plea Agreement Defendant admitted that the backpack in the back seat of the vehicle he was driving contained five clear plastic bags containing approximately one kilogram each of a clear crystal-like substance and one vacuum sealed bag with approximately one kilogram of yellowish substance suspected to be heroin. Defendant admitted that the DEA lab analysis of the substances revealed 974 grams of fentanyl and 4,807 grams of pure methamphetamine. (Doc. 77 at 10).

Accordingly, Defendant's Objection to the inclusion of 4,808.7 grams of actual methamphetamine in the calculation of his BOL is **OVERRULED**.

2. Lack of Fentanyl Purity Level Calculation

Defendant challenges the calculation of the quantity of the fentanyl analogue as 974 grams. Defendant argues that because the chemical analysis fails to reflect any values of "Substance Purity" or state any "Amount Pure Substance," that the ability to determine the amount or quantity of fentanyl analogue for purposes of determining the BOL is impaired.

As noted above, Defendant admitted that the DEA lab analysis of the substances revealed 974 grams of fentanyl. (Doc. 77 at 10). Further, Sentencing Guidelines, note (A) to the Drug Quantity Table, provides that if a mixture contains more than one controlled substance, "the weight of the entire mixture or substance is assigned to the controlled substance that results in the greater offense level." U.S.S.G. § 2D1.1(c) Drug Quantity Table, note (A).

4

Accordingly, Defendant's Objection to the inclusion of 4,808.7 grams of actual methamphetamine in the calculation of his BOL is **OVERRULED**.[4]

### C. Objection Related to Defendant's Role in the Offense

Defendant contends he is entitled to a four-level decrease in his BOL because his role in the offense was minor. Defendant argued he is not reliant on criminal activity as a means of making a living. He was self-employed as a welder in Lawrenceville, GA, and the U.S. Government was one of his clients. Defendant was an independent contractor at the Warner Robins Air Force Base. Defendant asserts there is no evidence that Defendant was more than an occasional, low level participant in a drug distribution enterprise. At the hearing, Defendant, through counsel, maintained that he was doing a favor for a person whom he disclosed to investigators and that he did not make distributions on a regular basis.

Section 3B1.2 of the Sentencing Guidelines provides for reduction in a defendant's base offense level if the defendant played a minimal or minor role in the offense:

> The application note provides, for example, that a four-level reduction would be appropriate "for someone who played no other role in a very large drug smuggling operation than to offload part of a single marihuana shipment, or in a case where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs." U.S.S.G. § 3B1.2, comment. (n.2). In contrast, a minor role in the offense "means any participant who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, comment. (n.3).

*United States v. Rodriguez De Varon*, 175 F.3d 930, 939 (11th Cir. 1999). Defendant bears the burden of proving a mitigating role in the offense by a preponderance of the evidence. *Id.*

In considering whether Defendant is entitled to role reduction points, the Court,

> [S]hould be informed by two modes of analysis: First, and most importantly, the district court must measure the defendant's role against the relevant conduct for which [he] was held accountable at sentencing; we recognize that in many cases this method of analysis will be dispositive. Second, the district court may also measure the defendant's role against the other participants, to the extent that they are discernable, in that relevant conduct.

---

[4] The Court notes that per the USPO response to this objection, even if the lower conversion rate for "fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide" is used, the applicable converted drug weight is over 90,000kg and the BOL would still be 38. *See* Addendum PSR Doc. 92 ¶ 19 and Doc. 92-1 at 1.

5

*Rodriguez De Varon*, 175 F.3d at 945.

Defendant does not indicate how his role is minor compared to that of his Co-Defendant, the only other participant whose role the Court is able to discern. The stipulation of facts in the Plea Agreement reflects that it was Defendant, not his Co-Defendant, with whom the investigating agents were familiar. Specifically, the agents were familiar with the green Range Rover Defendant normally drove, and it was Defendant who was contacted by the cooperating source and with whom the drug transaction was arranged. (Doc. 77 at 8–9).

In its investigation in preparing the PSR, USPO noted that Defendant contacted his friend, Rodriguez-Aybar, to travel with him for the drug delivery. PSR ¶ 10. The USPO further noted that photos and information obtained from Defendant's cell phone show (a) large quantities of suspected drugs, that are packaged in the same manner as those involved in this offense; (b) a press used to compact narcotics into "bricks"; (c) video depicting female shooting up drugs to the point she becomes unconscious; and (d) numerous text messages confirming drug distribution with locations, quantity and prices. PSR ¶ 12. Such activities are inconsistent with Defendant's contention that he was a minor participant in a drug distribution enterprise.

Accordingly, Defendant's Objection to the failure to include a four-level decrease in his BOL under U.S.S.G. § 3B1.2 is **OVERRULED**.

## III.   VARIANCES/DEPARTURES MOTION

In addition to the Objections addressed above, Defendant posed three bases on which the Court should grant him a downward variance or departure from the sentence to be imposed under the Guidelines.

### A. Defendant Subject to Deportation

Defendant suggests that because he is subject to deportation following his sentence, he should be given a downward departure subject to the mandatory minimum sentence. Defendant argues that a sentence beyond the mandatory minimum would be non-productive because it is highly unlikely that he will be able to return to this country after being deported upon completion of his sentence. Therefore, his likely deportation mitigates the amount of imprisonment necessary to punish him.

6

Any matters involving Defendant's possible, or likely, deportation will be determined by the Department of Homeland Security, U.S. Immigration and Customs Enforcement. Defendant's argument that the Court should be more lenient in sentencing Defendant because he will likely be deported and unable to return to the United States is unpersuasive. The Court declines to grant Defendant a downward variance or departure from the Guidelines on this basis of Defendant's likely deportation following completion of his sentence. The Court finds the sentence appropriate for Defendant's criminal conduct in the circumstances as shown by the evidence. *See*, *supra* Part II, Plea Agreement at 8–10 (Doc. 77), Final PSR (Doc. 92).

### B.  Alleged Investigation Misconduct

Defendant essentially alleges for the first time that officers or investigators involved in his arrest planted evidence in his vehicle. Specifically, Defendant alleges, through counsel, that the officers or investigators strategically placed Defendant's wallet and the fanny pack containing the gun in the driver's seat of the vehicle to suggest that Defendant had possession of the firearm at the time of his arrest. Defendant also asserts that money was removed from the fanny pack and has not been accounted for. Defendant asserts where the Government has engaged in misconduct, the Court may depart or vary downward.

As stated above, through the stipulation of facts in the Plea Agreement, the Government met its initial burden to establish the presence and location of the gun, and the burden shifts to the Defendant. The Defendant declined to present further evidence. Thus, the record stands on the representation in the stipulations. The Court declines to grant Defendant a downward variance or departure from the Guidelines on this basis of alleged misconduct on the part of the investigators or officers. The Court notes that whether money was present or removed from the fanny pack has no bearing on Defendant's sentencing. Thus, the Court need not make a finding on whether the money was present or not for the purpose of sentencing. Further, Defendant presented no evidence in support of his allegations.

### C.  "Sentencing Entrapment"

Defendant contends the investigating agents orchestrated the delivery, types, and amounts of drugs that Defendant delivered to their cooperating source for purposes of

7

effectuating a higher sentence for Defendant. In such cases, the Defendant contends a reduction in sentence is warranted.

The Defendant did not move to suppress any evidence on the basis of entrapment. Further, there is no evidence that the Government created a market for the drugs or that the Government manipulated or enticed the Defendant to sell the narcotics to the Government's cooperating source. The Defendant was already engaged in drug distribution activities and agreed to deliver the drugs to the cooperating source. The Court declines to grant Defendant a downward variance or departure from the Guidelines on this basis of alleged sentencing entrapment.

## IV. CONCLUSION

As the Objections and Variances/Departures Motions have been overruled or denied, the Court accepts the applicable sentencing range established in the Final PSR (Doc. 92). Based on Defendant's Criminal History Category of I and Total Offense Level of 37, the Defendant's U.S. Sentencing Guidelines range is 210 to 262 months. Based on the totality of the circumstances of this case, including the Guideline range, the factors found at 18 U.S.C. §§ 3553(a) and explained in the Court's ruling from the bench and in the separate Judgment and Statement of Reasons to be entered in this case, the Court sentenced Defendant to a term of 210 months imprisonment followed by a 5-year term of supervised release.

Based on the foregoing, it is hereby **ORDERED** that:

1. All of the objections contained in Defendant's Objections to Presentence Report (Doc. 91) are **OVERRULED**, and

2. Defendant's Motion for Sentence Variances (Doc. 95) and Defendant's Motion for Sentence Departures (Doc. 94) are **DENIED**.

**SO ORDERED**, this 23rd day of October 2024.

/s/W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**